Good morning. The first case of the morning is People v. Goodwin, 514-0432. A couple of matters to note for the record. I have been informed that the state could not be present today, and due to illness, there is a motion to continue orally, I understand it, and an objection by the defendant. Is that correct, counsel? And so the motion to continue is denied. The other matter is that the other judge on this panel this morning is Justice Chapman. She's not able to be here today. She will participate. She will listen to oral arguments and have the briefs available to her. And so she will participate fully as a member of this panel. We will hear then from the defendant in the Goodwin case. Are you ready to proceed? Please state your name for the record. And so now I'm going to have to go to Bonita Goodwin. May I please report? Unless there are questions, I'll focus today on the first two arguments. First, the only way the state could prove that Correctional Officer Tanya Atterbury was a public official was to prove that she was a sworn law enforcement or peace officer. Here, however, the state failed to present any evidence as to whether she was a sworn or deputized correctional officer, whether than a civilian correctional officer. Thus, the trial court, by finding a matter of law that all correctional officers were public officials, improperly directed this element in the state's favor at trial. Because the state failed to prove this element beyond a reasonable doubt, this court must reverse, outright, Ms. Goodwin's conviction for threatening a public official. The relevant facts are now to dispute. At trial, Correctional Officer Atterbury testified that on the date of the offense, May 7, 2014, she was a correctional officer at the Shelby County Detention Center, and she had been employed as such for five years. That was it. That was the extent of the state's evidence regarding her background. There is no mention as to whether she was deputized, sworn, versus being a civilian correctional officer. No mention as to what type of training she received, if she was allowed to make arrests, or authorized to carry a service weapon, or whether she had the power to maintain public order on the streets or serve warrants. Therefore, when the state only proved that Tanya Atterbury was a correctional officer, the state failed to prove beyond a reasonable doubt that she was a sworn law enforcement or peace officer, thereby a public official. Being a sworn law enforcement or peace officer is important under the statute because the legislature specifically defined public official here. Let me ask you a question, counsel. Sorry to interrupt, but the trial court had before it and had consulted the case law of people against Hale. Is that right? That's correct, Your Honor. People beat Hale and people do warrants. I have the Hale case in front of me. Yes, Your Honor. And let me read this sentence. This is in paragraph 21. Here, Officer Dolman was an employee of the Adams County Sheriff's Department. Thus, he was a law enforcement officer and thereby a public official. Why should this court not follow that case which makes that very direct conclusion? Your Honor, there's 102 counties in Illinois. This case was from Shelby County. That case is from Adams County. Because each sheriff's department from each county differs and they're run differently, whether a correctional officer from one county is a sworn or deputized officer, thereby being a sworn law enforcement officer, or a civilian correctional officer has to be determined on a county-by-county basis. And this court in People v. Cary once decided that there are statutes sometimes that require this incongruency, where one county certain officials may be protected while in other counties they won't be. Furthermore, the Cary court was the 5th District, correct? Cary is from the 5th District. Hale is from the 4th District. And it's a different county altogether. Illinois case law also supports that not all counties require sworn or deputized correctional officers. So in People v. Dave Bilippo, there's kind of a hybrid where a correctional officer working at the jail is a correctional officer, a civilian wearing a six-pointed star. That person, when he worked on boat patrol for one day a week, was a deputized sheriff, so he wore a five-pointed star. There's kind of a distinction there. There's other cases, like County of DuPage v. Illinois Labor Relations, where there's a clear distinction that one sheriff's department has correctional officers that are civilians versus sworn law enforcement officers, or deputized correctional officers. Illinois statute and code also supports this idea that there's a distinction between sworn law enforcement officer and law enforcement officer. So in the opening brief on pages 13 and 14 and the footnote on page 18, there's some codes and statutes that deal with this. To clarify, the nature of the office was a question of law for the trial court. Whether the person threatened was a public official is a question of that for the jury. To reiterate, there are two parts here. The trial court had to decide first, before constructing the jury, whether the correctional officers were public officials. However, this did not mean that the state's burden was lifted or lessened at this point. This was still an element of the crime, and the burden was still on the state. Even though the state failed to meet its burden, the trial court made a finding that all correctional officers were public officials as a matter of law, thereby improperly directing this element in the state's favor. Once the trial court improperly predetermined that correctional officers were public officials, all the jury had to determine was whether Tanya Adegare was a correctional officer. And that's the only thing that the state proved here, that she was a correctional officer. Because the instruction that the jury ultimately got was a person holding the position of a correctional officer is a public official. In conclusion, the state failed to prove with any evidence as to whether correctional officer Adegare was sworn or deputized, rather than being a civilian correctional officer. The state here failed to prove that correctional officer Adegare was a sworn law enforcement or peace officer, which in turn means that the trial court improperly found as a matter of law that correctional officers, all correctional officers, are public officials. So this, of course, refers to Ms. Goodwin's case outright. Second, the updated IPIs in this case were crucial for Ms. Goodwin because it addressed the essential elements of specific intent here. So if the court finds that correctional officer Adegare was still sworn law enforcement officer, then in that threat to the sworn law enforcement officer, the jury instruction must have contained specific facts indicative of a unique threat to the complainant officer. Here, the trial court instead instructed the jury on a modified IPI, where the court focused merely on Ms. Goodwin's actual words. The court failed to recognize that the legislature's intent to protect sworn law enforcement officers from true and legitimate threats and not merely from the everyday rantings of, you know, inebriated arrestees or the generalized threats from frustrated arrestees. It was improper for the court to instruct the jury this way. Because the trial court inaccurately modified the IPIs, resulting in conflicting IPIs, confusing IPIs, essentially this took the question away from the jury. So once again, the trial court improperly directed this element in the state's favor, and this court must reverse and remand Ms. Goodwin's case for a new trial. The relevant facts here are that correctional officer Adegare testified that she was on duty, responsible for booking Ms. Goodwin on May 7, 2014. During the intake process, she asked Ms. Goodwin, are you thinking about killing yourself? Ms. Goodwin replied, no, but I'm thinking about killing you. At that point, she turned to the deputies around her and asked, threatening a public official? The deputies agreed. At that point, she turns back around to face Ms. Goodwin, and Ms. Goodwin added, I can go to your house with a gun and there's nothing you can do about it. At the jury instructions conference, the trial court improperly interpreted people behailed and people be warranted, ordered the state to add in the instructions, or issue's instructions, a specific proposition, rather than what the updated IPI 11.50 should have said. The proposition was that the defendant knowingly and willfully delivered or conveyed directly or indirectly to Adegare a threat, specifically, quote, no, but I'm thinking about killing you. I could go out to your house with a gun and you couldn't do anything about it, end quote. Then it added the additional proposition. This is clear and prejudicial error here because the updated IPIs indicated that the jury should have been instructed with, quote, that the threat to a sworn law enforcement officer contains specific threats, or specific threats indicative of a unique threat to a sworn law enforcement officer or a family, and not a generalized threat of harm. Kayla and Warrington clearly state that when a public official is targeted and that targeted public official is a sworn law enforcement officer, this unique threat element must be given. Otherwise, there's a big risk that the jury will find the defendant guilty based on a generalized threat of harm. Here, Ms. Goodwin's statements to Adegare at the jail, surrounded by all the law enforcement officers, were exactly the sort of generalized threats that arise from daily conflict between law enforcement officers and civilians. Her statement didn't amount to a specific threat or a unique threat that was recognized by the legislature here or required under the statute. Though the trial court bore the ultimate burden to accurately instruct the jury of the essential elements of the crime, here the trial court specifically told the state how to modify the instructions. And by doing so, the instructions were incomplete, inaccurate, and complaining. So Ms. Goodwin asks that this court reverse the remand her case for a new trial. Thank you, counsel. The court will take this matter under advisement and issue a decision in due course.